Case number 23-17-DC. Jose Vasquez for the District of Columbia and Ruben Agosto, Officer Individually and in his capacity as an employee of the District of Columbia. Mr. Magid for the Appellant. Mr. Locke for the Appellees. Mr. Majid. Your Honor, may I reserve two minutes of argument for rebuttal, please? Certainly. Your Honor, may I please have a moment of silence? Yeah, please, the court. Primary issue in this case is whether a police officer and more broadly, the Metropolitan Police Department or any police agency may escape liability by ignoring clear exculpatory evidence. My client, Jose Vasquez, was arrested on a warrant issued by Will County, Illinois that named a different Jose Vasquez with a different social security number. MPD ignored the difference between the social security numbers, beginning with an arrest in October of 2016 and incarcerated him. Officer Ruben Agosto took it upon himself to send fingerprints and a photograph of Mr. Vasquez to Will County and less than three hours later, got the response at the teletype room, which is where the responses typically go at MPD headquarters that said, do not, the person you're holding is not the person we want, release him. Now, there's been no explanation from MPD what happened to that notice, but it's clear that Officer Agosto didn't do any follow-up. He said his job was done, in his view, when he sent the message. And although he acknowledged that he was undertaking to determine whether Mr. Vasquez was, in fact, the person who was sought by Will County, he apparently thought that the answer to that was unimportant. Now, whether or not that was a false imprisonment isn't before us, right? It's only the 2017 incident. That's correct. This is the summary judgment that was granted previously. So the issue that went to trial was the false imprisonment claim, Your Honor. And you're not appealing the granting of summary judgment on the liability with respect to the 2016 incident? Oh, we absolutely are, Your Honor. Yeah. On the false imprisonment tort or on the constitutional? On the constitutional argument, Your Honor. Yes, but not- Yes, you're right, Your Honor. I'm just trying to make sure- Yeah, I misspoke myself, Your Honor. I apologize. So the explanation is Officer Augusto says, well, I didn't think it was my job. I thought it was the officer who did the initial check on the NCIC database. That officer said, no, that isn't my job. My job is only to do the initial check. The teletype room says it's absolutely Officer Augusto's responsibility because it's the person who sends the request to the foreign jurisdiction who is responsible for getting the response. And then it turns out that it's Officer Augusto who on November 3rd is the person who transmits this information when the U.S. Attorney's Office asked for it. So he's got it this whole time. And the argument the district made and that the district court accepted was that there was not clear law for Officer Augusto to follow that said that it was wrongful to ignore the clear statement from Will County that says, release this guy. And he's then held for another six days. Are there any police regulations or is there any law requiring them, the police, to make inquiry of the police in the jurisdiction that issued the warrant? That is what MPD practices, whether it's a written policy. I don't know if it is, but MPD says that when there is a question as to whether the person is the right person incarcerated, they inquire of the foreign jurisdiction. When there's a question. Right. What if they're certain they don't have to make inquiry? So that's another, that's a broader issue. So apparently what MPD does, if there is no question raised, if someone comes in, they run a very cursory check in the NCIC database to say, is there a person with the same name and birthdate? And it stops there, but then goes to our Monell claims, which is what about people who have very common names like Jose Vasquez, who tell you I'm not the person arrested. In fact, I have been cleared before by courts. You have a photograph and fingerprints of the person who really is wanted. That's not me. And there is a clear statement in the NCIC record that says do not arrest the Jose Vasquez with my client's social security number. And all that's ignored. So that gets to a broader policy issue on the part of the District of Columbia, which is what makes this case so perplexing is, on the one hand you say, well, there's no firm policy to follow up. And that is precisely the problem when you see that over time repeatedly, it is not uncommon for the wrong person with the same name to be picked up. And there's no clear means within MPD of dealing with that situation. But the immediate claim against Officer Augusto is he is under affirmatively undertaking. And he admits that the reason for that is to determine if they've got the right guy. And Sergeant Mack, who's in charge of the fugitive unit, says, yeah, it's important to us to find out because we don't want to detain people who are not the person wanted in the warrant. Yeah. You cited below a case called Sanders. Right. That were the DC Court of Appeals in the Fourth Amendment context said that should doubt arise as to the identity of the subject of the warrant, then the police have basically an obligation to make immediate reasonable efforts to confirm or deny. Right. Whether this warrant applies to this individual. Is that the clearly applicable law to defeat qualified immunity or what other cases can you point to? Yeah. There is strangely a paucity of case law on this precise situation. But yes, although Sanders was in a somewhat different context, it does state the applicable law in our view, which is if you're confronted not just with a single protest of innocence, because I'm sure many prisoners protest innocence and say, I'm not the guy. But if you're not only confronted with all kinds of evidence, it's not the right person. It's clear in the NCIC report that the person is not being arrested under a valid warrant because it named somebody else. And you undertake to find out if that person is the person sought in the warrant and then just ignore the result. An incarcerated person, that is a clear violation of liberty interest. Should I turn to the Monell claims, Your Honor, or Your Honors? It's your time. Okay. Very briefly on the Monell argument. Again, the argument that the district has made and that the district court embraced was, well, there can't be, when you talk about a policy, there has to be a clear constitutional violation in the past. Otherwise, the fact that there's been a failure to train or a failure to have a clear policy can't give rise to a claim under 1983. And that's not the law. This court in Hurd and in Baker made it clear that it was the risk of a constitutional violation that was the issue. And here where we've shown that 10 times a month, the District of Columbia or Metropolitan Police Department itself confesses that it has miscommunication with its teletype room,  to the U.S. Attorney's Office, when there is evidence that it is not uncommon for people with very similar names to be arrested and they turn out not to be the right person, it was all but inevitable that something like this was gonna happen if you don't have any kind of clear procedure for what happens when you send a teletype message. Who is to receive it? What are you to do? There's no clear procedure about checking social security numbers. Yes, it's true that somebody could fake a social security number. I'll ask you about the false imprisonment finding by the jury. So there you say that in part that can rest on collective knowledge, which of course is a Fourth Amendment concept drawn from the Fourth Amendment case law. So I was wondering, are you aware of any D.C. case that applies collective knowledge in the false imprisonment context? Your Honor, I'm- Obviously the federal court is setting diversity and we're not free to innovate new law. We have to look at the law of the district. So are you aware of any case? I'm not. This is an issue of first impression as far as I'm aware in the district. The district of Columbia refers to the Curry case, but that's quite different. It doesn't address this issue. Curry is an issue where somebody was in a giant store, apparently went to the pharmacy and then put a slab of beef under his jacket and- So there's no case though that says this concept applies in this context? No, there isn't. But there is law because the district itself advocates for it. Their argument is that it's perfectly fine. And their excuse in 2017 is that it was perfectly fine to continue detaining plaintiff Fasquez because they could rely on what the Secret Service told them. So they're saying that despite all of the evidence that this wasn't the right person, they could rely on another law enforcement agency. So they are, which is not to the fugitive squad, but to the people at the precinct. So they're using this kind of collective knowledge as a defense and the door swings both ways. So you didn't cite it in your brief. I'm gonna ask your friend on the other side about a case called Marshall versus District of Columbia at 391 A. 2nd, 1374. And the pen site is 1381, but there the DC Court of Appeals in a false imprisonment case said that an officer is imputed to have constructive knowledge. So it didn't use the term collective knowledge, which is kind of a term of art in the Fourth Amendment context, but it used the term constructive knowledge. And then the party cited a case called Scott and that case is bandied about. And Scott cites a DC Court of Appeals case called Woodward, which is 387 A. 2nd, 726. And Woodward says in the false imprisonment context that if there's notice of a potential invalidity there, the warrant was invalid because it was stale and under DC law, then it was invalid because it was over a year old. So that was the defect, but basically it stands for the proposition if there's notice that there's a problem, then you have a duty to investigate, which is the same thing that Sanders says, which is in the Fourth Amendment context. And Scott cites, which is a false imprisonment case, cites Sanders, even though it's a Fourth Amendment case. So I don't know that the DC Court of Appeals sees the Fourth Amendment kind of false arrest context any differently than the common law false arrest context. Do you disagree with any of that? I don't disagree. I'll say that I'm embarrassed that I didn't cite the cases, Your Honor, but no, I don't disagree. What is your, the district court said that that it was granting judgment notwithstanding the verdict because it basically agreed with the district's argument that there was no duty to investigate the discrepancy of social security numbers. You obviously disagree. Why should we reverse that rule? Well, because you have a situation in which Mr. Vasquez tells MPD, I was just here four months ago. We went through this whole exercise before. You look at the photograph. You can tell the guy with the tattoos that's wanted in Illinois is not me. The fingerprints don't match. And I was released previously. Go look at the file. MPD has before it, the social security numbers don't match. They have available to it all the files and all the rest. And the officer just says, yeah, I looked at these and the social security numbers were different, but essentially I just chose to ignore that. And for the reasons you just cited, Your Honor, that's not permissible. You can't just turn a blind eye to exonerating evidence and say, therefore I'm in the clear. So he was confined in the second arrest for five hours, is that? No, he was actually confined overnight and then through the following afternoon. The district court tried to characterize it to say, well, really the only period is five hours because that's when officer who- Rollins. Rollins, yes. Thank you, Your Honor. When officer Rollins then went out and made out the affidavit to the court representing that this was the person wanted, notwithstanding the discrepancy in social security numbers. But for the same reason, when Mr. Vasquez is protesting all of this upon arrest, this really is imputed for a longer period of time than just at the time of arrest. Both of these arrests were for traffic violations? They were, Your Honor. I mean, one was, I think, a failing to signal a turn and the other was a broken taillight. Car impounded? I don't know, Your Honor. I know he was. Yeah. Yeah. All right, we'll give you a couple minutes on rebuttal. Thank you, Your Honor. We'll hear from the District of Columbia. Mr. Love. Good morning, Your Honors. May it please the court, Richard Love for the District of Columbia and Officer Augusto. If I could start with the facts relevant to Officer Augusto. Officer Augusto was not the arresting officer. And he was not the fugitive unit officer who was responsible for the case and responsible for checking with Will County as to whether the warrant was still active and that they would extradite. Indeed, he didn't have any contact with the case until five days after Mr. Vasquez was arraigned in court. And that was because on that day, he happened to answer the phone when there was a call either from the U.S. Attorney's Office or Will County, he could not recollect which, for him to send a photo and fingerprints to Will County. He emailed those fingerprints and photo to email to Will County. He also testified that, or there's testimony that the fugitive unit goes up to the teletype office to pick up messages in their inbox at least twice a day, that the response would not have been delivered to him because he wasn't the officer from the fugitive unit whose case this was. And the teletype, which is how Will County responded that didn't respond by an email reply back to Officer Augusto, their teletype had said, attention warrant slash fugitive squad. Now, under those circumstances, there's no case that indicates that emailing a photo and fingerprints created an ongoing obligation under the Fourth Amendment for Augusto to personally monitor Will County's response. Indeed, I would submit the case as law is to the contrary. If you look at the Supreme Court case of Baker v. McConnell, there the court clearly said, indeed an official charged with maintaining custody of the accused named in a warrant has no constitutional duty to perform an error-free claim investigation of a claim of innocence. And I think this case is very close to Baker v. McConnell. They both dealt with mistaken identities or individuals that are arrested on a valid warrant, but the identity is mistaken. There it was the wrong McConnell brother in Baker, and here you have the wrong Vasquez. And the period of time that they're held is very similar, three days for Mr. McConnell, and here it was five days subsequent to Officer Augusto's email. I don't want to pre-terminate this if my colleagues have questions about the constitutional claims. I'd really like to hear from you about the ruling on the false imprisonment, particularly given the district court had key, the crux of the district court's ruling granting the JNOV was that Rollins had no duty enacted completely reasonably after, to do nothing more after noticing the discrepancy of the social security numbers. And I don't see how that comports with the law of the District of Columbia in Woodward or this Mitchell case, where it says that once the police are essentially on inquiry notice, they have to inquire in the false imprisonment context. So help me understand why it was an error for the judge to grant the motion if that's the DC law. Well, I'm not familiar, and it wasn't cited in the case with Marshall or- But the argument was made. The argument- You have to get the law right. We can't make arguments for parties, but if the argument is made, we have to correctly apply the law that applies to that argument. Do you agree? Sure. I'm just indicating I'm not familiar with the two cases, so I can't really respond. I am familiar with Scott. We did cite that in our brief, because in Scott, where an officer had suspicion that they were holding the wrong individual, the DC Court of Appeals ruled that that wasn't sufficient. And they affirmed a judgment for the district in, I believe, a false imprisonment context. But if I could address your question, Your Honor, both factually and legally. So factually, the only evidence that didn't match was the Social Security number. Every other indicia of identification here matched. But it was- The photo didn't match. Excuse me? The interference didn't match. The photo did match in 2017. The photo absolutely did match, Your Honor. Officer Rollins testified that he relied on the Secret Service's- Well, he relied on what the Secret Service told him. Well, it's in the arrest report. And officers, we have testimony from Sergeant Mack, as well as from Officer Rollins, that that's what they rely on, because that is the report of the circumstances under which the arrest occurred. It provides the only details that the fugitive unit uses and relies on. It establishes the probable cause for here, Mr. Vasquez's arrest. There was no contrary testimony that was unreasonable, rely on the Secret Service's report of a photographic confirmation. It indicated they received a photo from Will Townsend and that it matched the subject that they had arrested. He also has the NCIC confirmation, which is- Are the photographs in the appendix?  having received is not in the record. Just the Secret Service, the arrest report itself is. And it was- Not to compare. So we can't look at them and learn whether, or decide whether they match, as you just said. Is that right? Not the photo that Secret Service says they compare. That's not in the record. But Officer Rollins clearly testified that he relied on that photographic confirmation. That was a part of his consideration as to whether the correct individual was in custody. But he also relied, it was the same exact name, it was the same exact birthday, and the physical description matched. So the only indication- The Secret Service, what, did the agent, did the Secret Service agent testify? Testify in the trial? No, he did not. And either side obviously could have called him, but he was not called. Was there any objection to the testimony by Rollins that it was hearsay? Yes, Your Honor, it was an objection that it was hearsay, and it wasn't admitted for the truth. It was not admitted. So you're arguing it for the truth to us? No, I'm arguing it just as it was admitted into evidence, which is the state of mind for Officer Rollins, Officer Rollins' state of mind in terms of why he did what he did. And that was- No, you just argued that the photos matched, and that would be using it for the truth. No, I'm using it. That's what Officer Rollins read, that there was a photographic confirmation. That was his understanding of the facts as to why he proceeded to develop- So you say you're not familiar with Woodward, and I take that. But Woodward says that there were the police officers who were on notice of a potential invalidity with the warrant. The court says, at a minimum, the officers were required, quote, to investigate in order to determine the status of the warrant itself before going further. And then they go on to say the failure to investigate would be, open quote, a dereliction of duty, close quote. That's how it describes the law of false imprisonment. If that's the law, how is the judgment here, the jury verdict here, against the weight of the evidence? Because I think, as the district court probably found, that we have evidence in the record from multiple people, Officer Rollins, Sergeant Mack, as to the differing social security numbers, that individuals often manipulate their social security number, that it's not a red flag, it's not a disqualifier. And Officer Curry explained, I mean, excuse me, Officer Rollins explained why he didn't believe that the differing social security numbers was something that needed to be followed up on in light of the matching information from the NCIC data, the birth date. Why would it be unreasonable for jurors to feel different? I mean, the issue here isn't whether the juror could reasonably conclude, okay, yeah, maybe, maybe that's not a dereliction of duty. The issue is, is it unreasonable, could no rational jury find that to be a dereliction of duty? I would go back to the instruction that the court properly gave, and it's from Curry, and Curry clearly says it's the law of the District of Columbia and that is that the officer had to undoubtedly have learned that Vasquez was undoubtedly not the subject of the Will County Warrant. And there's simply no evidence that points to that. But that kind of begs the question, that is the ultimate finding, but if you have a duty to investigate, and if you had just simply looked two minutes further into the file and you would have found a document that in bold letters said, don't arrest this man, he's not the guy. At that point, if he had seen that, do you agree that he would undoubtedly have known that... Sure, of course, Your Honor, but... Okay, so then if there is a duty to investigate, how is it under these facts, how would it be irrational for a jury to say he had no duty to inquire further when he saw that there were different social security numbers? Well, I don't think there was, one, this isn't a negligence case. Two, he had no duty because, as he explained, a social security number is not disqualifying, it's not a red flag, and he had abundant evidence from which he resolutely believed that officer, that Vasquez that he had in custody was the correct individual. I mean, is there some distinction in what duty is required when the original arrest is valid? Yeah, I think- Continuing custody, because I'm also not familiar with this Woodward case, but that seems to be a situation in which the arrest was not based on, you know, where the arrest was not properly supported. I think there's an absolute difference. I mean, here, there's no question there was probable cause for arrest, Mr. Vasquez. He doesn't challenge that on appeal. Is there a different standard for the continuing custody after arrest? Yeah, and I think that's where the instruction comes. That's why, again, you look at Baker, the Supreme Court says, you know, that I understand it's in a constitutional context, you know, that they don't have to perform an error-free investigation. So how can you use the Fourth Amendment cases when they help you to, in the tort context, but say that Pellant can't use the Fourth Amendment cases when they help him in the Fourth Amendment context? Well, as I said, I acknowledge it's the Fourth Amendment context. That's why I mentioned that, and I'm not trying to rely on that. I think more directly, I'm relying on the instruction, which is dramatically different from an instruction that would be at issue if this was a challenge to probable cause, whether or not there was an objective basis that there was facts that supported a criminal activity. So you think that it's different so that if at the moment that he's arrested, he says, look, I've been through this drill before. I have a different social security number than the guy that they're looking for in Will County. And those have been the facts. You think that the D.C. law, Woodward, would mean that, okay, they have a duty to inquire. At that point, but if they've had him in custody and he makes that claim, and they believe that they had probable cause when they arrested him, they don't have a duty to inquire just because they had probable cause at the time that they arrested him? I mean, what's the kind of logic behind you have a duty to inquire at the moment of arrest versus later? Well, again, I think what the D.C. Court of Appeals recognizes the law in the District of Columbia relevant to false imprisonment is articulated in the Curry case. And the standard there is that the officer has to undoubtedly, you know, and here, there was no communication to Officer Rollins. Officer Rollins never spoke to Mr. Vasquez. He never knew that he protested at Second D. That's the evidence. All he knew was that the paperwork showed that this individual matched the name, birthdate, physical description on the NCIC report, and he had photographic confirmation from the Secret Service arrest report. That's what he knew, and he acknowledged- He knew that their Social Security numbers didn't match. And he did. And he explained why he did not believe that was disqualifying. Why would it be irrational for a jury to just reject his explanation and his rationalizing of why he didn't have to do anything further? Well, I think the court gave an example or referenced the example in the instruction from the restatement that, you know, he, in the illustration in the restatement is- So if the jury has facts that are different than one of the illustrations in the restatement, then they've acted rationally, irrationally? No, I'm trying to explain that I believe that in light of all the evidence, the mere difference in Social Security number was not sufficient for a reasonable jury to conclude that Officer Rollins undoubtedly knew that Mr. Vasquez was not the person wanted in the hotel. So on the remediator, one of the grounds that the district court relied on was the fact that the jury had found in the district's favor on malicious prosecution. And the district court said that it couldn't reconcile finding in favor of the district on that count and then finding against the District of Columbia on false imprisonment. But malicious prosecution requires proof of malice and false imprisonment doesn't, right? Right, but it also requires an absence of probable cause and recklessness or malice. So you could reconcile this by saying that the district, the jury found that there was an absence of probable cause, but no malice. And that's why they rendered a verdict for the district in Melissa's prosecution, but they found an absence of probable cause and the district and proof that they knew that this wasn't the right person. And that's why they find in favor of him on false imprisonment. There's nothing, what's contradictory based on the elements of those offenses? Well, I concede the jury could have found a possible one without the other that would be less supportive of what the district court cited the differing judgments for. But I don't think the district court relied on simply the malicious prosecution judgment, nor are we. I think the court- But he said that that was- Was further confirmation. That was part of what he relied on. And if that was part of what he relied on and that was an error of law, isn't that an abuse of discretion? Well, I think he cited that for the judgment not with the judgment as a matter of law. I don't think he cited it for the remittance. I think I misspoke. He didn't cite it with the remittance? Again, no, I think it's, you would look at his ruling and in his totality, it's very clear. It's very clear that at the end, he says, he thought that the judgment on the malicious prosecution provided further support for his ruling that no reasonable juror could have found on the evidence that was submitted to it, that Officer Rawlins undoubtedly knew that Vasquez was the wrong person. And I think the court certainly was free to and could have construed that verdict as supporting that decision. Yes, perhaps it could be construed differently, but I don't think he abused his discretion by citing to that or, and again, he didn't rely on that. That wasn't his primary reason. Let me ask you a question about collective knowledge and collective knowledge doctrine. Yeah, sure. I have to know a little bit about it because I lost a collective knowledge case 30 some years ago when I was a public defender, but that case, NRAE-MEB, the DC Court of Appeals held in the Fourth Amendment context that you could use the corporate knowledge of the police department, even items that weren't communicated from one officer to the arresting officer. You could add all of that up to constitute probable cause or reasonable suspicion. And it rejected a rule explicitly from Supreme Court that Supreme Court had mentioned in a case called U.S. v. Hensley that suggested, which is discussed and cited in the papers, which suggests that it's gotta be communicated because you rely on Hensley to say that you can't impute knowledge to Officer Rollins. But the DC Court of Appeals says, well, no, we're adopting a rule broader than Hensley here in NRAE-MEB, which is 632, 638 a second 1123, decided in 1993. So if that's the law in the Fourth Amendment context, why shouldn't, why isn't sauce for the goose, sauce for the gander? Why isn't the knowledge imputed to Officer Rollins that's in the NCIC report? I'm sorry, that's in the justice file. I understand. Why doesn't it make sense to use it in that fashion? Why is it a one-way ratchet? Well, two reasons. I think that I'm not familiar with NRAE-MEB, but I was able to find, and no case was cited that holds that probable cause can be created or defeated by aggregating the collective knowledge of officers who have neither communicated nor collaborated and are merely members of the same law enforcement unit. And I would point to the court, we referenced it in our brief, but I'd like to elaborate a little bit on it, is the Gorham case. I know it's certainly not binding on the court, but I think its analysis is instructive because it deals with the scope of the collective knowledge doctrine and analyzes cases from this circuit and from several other circuits. And it explains why it would not extend the collective knowledge doctrine to encompass cases in which no actual communication or direction occurs between the officer conducting the search or seizure and the officer in possession of the information giving rise to the requisite reasonable suspicion and where the relevant facts are merely aggregated after the fact. And I think that's what, I don't think the collective knowledge doctrine can be expanded to impute to Officer Rollins information that was never communicated to him by any other officer or that simply existed in MPD files that he was unaware of. The other point in terms of kind of like the goose, what's good for the goose is good for the gander. I think if you look at Ramirez and the cases it cites, like Whitley and the other cases, I mean- I mean, I hear what you're saying, but the law in the District of Columbia is NREA-MEB. And it says that the corporate information available at the time that the officers effectuate stop or an arrest or a detention is what is to be considered. Well, again, I think there is a difference between the initial arrest on a probable cause standard and whether there's an objective basis to do that and whether or not maintaining someone in detention in a false imprisonment case are different for the reasons I've kind of said. But the other point that I was going to make, Your Honor, if I could, is that in Ramirez and Whitley, in the cases that are cited in Ramirez, they found that, yeah, an officer can act on a warrant or a police communication from another agency or officer to arrest an individual, even if they don't know personally the particulars that have been communicated to him. But if the warrant turns out to be wrong, the arrest is invalid as is the search, the fruits of that search. But none of those cases questioned the reasonableness of the arresting officer's reliance on that information. And I think that's similar here. I mean, in all those collective knowledge cases, they acknowledge the officer can reasonably rely on that information. And here, Officer Rollins reasonably relied on the information that was presented to him to maintain a custody of Mr. Vasquez. And it's a far cry from that to jumping to the evidence that would need to support a finding. Let's suppose in this case, Officer Rollins mentioned to another officer, yeah, this guy says that he's not the one because he has a different social security number. Isn't that, we hear that all the time. And the other officer looks at justice and sees that it's really not the same person, but just kind of laughs and says, well, we'll let this guy sit a couple of days and somebody will figure it out eventually. And he never does anything about it. So he doesn't tell Officer Rollins. So under your theory of what the law is, Mr. Vasquez loses if those are the facts? Well, I think in the false imprisonment context and as the jury was instructed in this case, it really rose and fall on Officer Rollins' subjective belief and the evidence here is that- So his subjective belief doesn't require him to investigate and also it's immaterial if another officer investigates and finds out that Vasquez is exonerated but doesn't do anything with it. But as long as it's not communicated to Rollins, no liability for the district, that's the outcome? I believe so, Your Honor. And I think, he's not left with options. I mean, there may well be the basis for a negligence claim but I think in the false imprisonment context where there needs to be evidence that the person being held is, there's knowledge that the person being held is undoubtedly the wrong person. Here that has to be, Officer Rollins is the only person here in that scenario. So they can do nothing to try to obtain knowledge when they're on inquiry notice and we're not going to impute knowledge when somebody else knows it. Just as long as the person that gets sued doesn't have the knowledge, the district evades liability. Well, I think in these facts, there wasn't inquiry notice because of the abundance of evidence that confirmed his identity and the unreliability of social security numbers as was explained in the evidence in the testimony of various officers. We've had an abundance of cases cited to us but we do our own research and we find other cases that appear to be on point and that appear to say something kind of, so like we don't have any duty, just because you cited to us a bunch of other cases, we don't have any inquiry notice or duty to look for other cases. I mean, I don't see how that's how inquiry notice works. It's just because either something rises to the level of giving you some sort of duty to investigate or it doesn't. I'm not arguing to the contrary. I'm saying here, the facts didn't trigger the social security number alone, didn't trigger a further duty to investigate given the testimony and given the evidence that there was a matching name, a matching birth date, a matching physical description and photographic confirmation. All right, any other questions? All right, thank you. Thank you. Thank you. All right, we'll give you two minutes on rebuttal. Unless the panel has questions and I am happy to answer those, I'll waive my. All right, thank you. We'll take the matter under scrutiny. All right, thank you, your honors.
judges: Wilkins, Rao, Randolph